FILED

August 10, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 7:15 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| LANDON FOWLER,<br>　　　　Employee, | ) ) ) | Docket No.: 2016-08-0212 |
| v.<br>MUELLER INDUSTRIES,<br>　　　　Employer, | ) ) ) ) | State File No. 8325-2016 |
| and<br>SEDGWICK CMS,<br>　　　　Insurance Carrier. | ) ) ) ) | Judge Allen Phillips |

## EXPEDITED HEARING ORDER DENYING MEDICAL AND TEMPORARY BENEFITS

This matter came before the undersigned Workers' Compensation Judge on July 14, 2016, upon the Request for Expedited Hearing filed by Landon Fowler pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Fowler requests medical and temporary disability benefits for an alleged exposure injury. Mueller asserts that he failed to established causation of his alleged injury, that he failed to provide proper notice of his injury, and that he failed to file his claim within the applicable statute of limitations. The Court finds the dispositive issue is causation and, for the reasons set forth below, holds Mr. Fowler has not come forward with sufficient evidence of causation for this Court to determine he would likely succeed at a hearing on the merits.[1] Accordingly, the Court denies his request for benefits.[2]

## History of Claim

Mr. Fowler is a sixty-seven-year-old resident of Tipton County, Tennessee, who

---

[1] The notice and statute of limitations issues need not be addressed.

[2] The Court has attached a complete listing of the technical record and exhibits admitted at the Expedited Hearing to this Order as an appendix.

1

operated the "chroming machine" at Mueller. The chroming machine features a part known as the "squirrel cage," a structure containing a blower that vents fumes away from the operator. A malfunction of the squirrel cage forms the basis of Mr. Fowler's case.

Mr. Fowler offered different versions of when the onset of symptoms began. He alleged by affidavit that: "On or about June 1, 2014,[3] I began suffering breathing problems, constant shaking, vertigo, stomach ulcers and stomach polyps due to inhaling reverse exhaust on a chroming machine at Muller [sic] Industries while performing the requirements of my job as a polish/chrome operator." (Ex. 4.) At the hearing, he testified he began having stomach issues in the "middle of spring of *last* year," referring to 2015. (Emphasis added.) Regardless of the date of onset, Mr. Fowler testified he never suffered any of his alleged health problems prior to the alleged work exposure.

Mr. Fowler testified he continued operating the chroming machine until December 8, 2015, when he began "shaking," having leg cramps, and feeling "terrible." He reported these symptoms to his supervisor and sought medical evaluation from Dr. Samuel Johnson, his personal physician. According to Mr. Fowler, Dr. Johnson diagnosed "sepsis" in his right leg and breathing difficulties. Dr. Johnson hospitalized Mr. Fowler for one week but did not provide Mr. Fowler an opinion regarding the cause of his ailments. Mr. Fowler offered all of Dr. Johnson's notes from July 2014 through March 2016. (Ex. 7.)

Ms. Crystal Buckner, Mueller's Human Resources Manager, testified Mr. Fowler reported feeling ill on December 8, 2015. She assisted Mr. Fowler with the completion of a short-term disability (STD) application that listed his health conditions as "CVA, sepsis, and dehydration." (Ex. 11.) On the medical STD certification, Dr. Johnson marked that the conditions were not work-related. *Id.* Mr. Fowler testified he drew STD until "the end of January 2016," when he returned to work; Ms. Buckner clarified Mr. Fowler actually drew benefits until he returned to work on February 2. On that date, Mr. Fowler told Ms. Buckner he related his illnesses to chroming machine exhaust. She reported the claim to Mueller's workers' compensation carrier, who completed a First Report of Injury. (Ex. 1.)

Prior to February 2, Ms. Buckner became aware Mr. Fowler suspected possible exposure. Mr. Fowler's suspicion stemmed from comments he heard while attending a Christmas party at Mueller in December 2015, and shortly after his release from the hospital. Namely, Mr. Billy Bishop, a maintenance person at Mueller, told Mr. Fowler that another employee improperly wired the squirrel cage in July 2014, causing the blower not to vent air in any direction. Mr. Bishop testified by affidavit he personally repaired the machine in November 2015. Ms. Buckner admitted Mueller became aware of

---

[3] At the hearing, Mr. Fowler testified the date he noticed symptoms was approximately *July 1, 2014,* rather than June 1, 2014. This technicality is not dispositive to the outcome.

the malfunction when Mr. Bishop brought it to her attention.

Mr. Bishop further testified that the "improper setup caused the chroming machine to release reverse exhaust into the air." (Ex. 5.) Also, Mr. Bishop stated he "believ[ed] Mr. Fowler inhaled reverse exhaust from the chroming machine for a long period of time." *Id.*

Because of Mr. Fowler's exposure suspicions, Ms. Buckner retained an industrial hygienist to perform testing of the air quality near the chroming machine. (Ex. 13.) Nothing in this report caused Ms. Buckner, on behalf of Mueller, to take further action regarding the chroming machine. Also, Ms. Buckner confirmed Mueller participated in a voluntary TOSHA program involving routine inspections and, she was aware of no issues with the chroming machine raised by such inspections. She knew of no other employees suffering ill effects from any exposure.

Mr. Fowler worked from February 2 until May, when he again began "feeling bad" and sought further care from Dr. Johnson. He did not elaborate further regarding his condition but, testified he was admitted to the hospital for overnight observation. He testified he told Dr. Johnson of his alleged exposures to chrome exhaust and that Dr. Johnson told him he "didn't know" of any relation between such alleged exposure and his health conditions. A "Medical Request Form" for STD completed by Dr. Johnson on June 20 listed the diagnoses as "1) CVA; 2) HTN; 3) GERD and 4) Cardiomyopathy." (Ex. 9.) Dr. Johnson checked "No" beside the question "Is this condition work-related?" *Id.*

Because of his continued problems, Mr. Fowler sought further care from a Dr. Zaidi, a pulmonologist.[4] He told Dr. Zaidi he suffered from shortness of breath and that he had been exposed to fumes at work. As of the hearing, he had seen Dr. Zaidi on three occasions and had undergone a chest x-ray and "some more tests." According to Mr. Fowler, Dr. Zaidi made no diagnosis but told him that, if he were to stay away from "chemicals" for six months, that "he should have no problems." On cross-examination, Mr. Fowler admitted he had no medical record stating his conditions were work-related.

Mr. Fowler requested medical evaluation for his alleged exposure, specifically requesting a panel of physicians. However, he preferred Dr. Zaidi be designated the authorized treating physician. Further, he claimed entitlement to temporary total disability for the period of December 8, 2015, through "January 2016," and for a second period of "May 2016," onward.

---

[4] Mr. Fowler offered Dr. Zaidi's records, but Mueller objected on grounds the records were not submitted ten days prior to the Expedited Hearing. Mr. Fowler argued he received the records fewer than ten days previous. The Court advised Mr. Fowler it would exclude the records pursuant to Tennessee Compilation Rules & Regulations 0800-02-21-.16(6)(a) and Rule 7.01(A) of the Practices and Procedures of this Court because the records were not filed within ten days of the hearing. Mr. Fowler elected to proceed.

Mueller argued Mr. Fowler had not shown an exposure to any harmful substance.[5] However, even if he had, Mr. Fowler produced no medical evidence establishing a causal relationship between his ailments and his employment at Mueller.

**Findings of Fact and Conclusions of Law**

*Standard Applied*

At this Expedited Hearing, Mr. Fowler need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

*Causation*

Mr. Fowler must establish an injury by accident arising primarily out of and in the course and scope of employment that causes disablement or the need for medical treatment. Tenn. Code Ann. § 50-6-102(14) (2015). The injury must be caused by a "specific incident or set of incidents identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2015).

As our Appeals Board explained in *Smiley v. Four Seasons Coach Leasing, Inc.*, Nos. 2016-06-0104 and 2016-06-0105, 2016 TN Wrk. Comp. App Bd. LEXIS 28 (Tenn. Workers' Comp. App. Bd. July 15, 2016):

> A "set of incidents," by definition, cannot occur instantaneously, but must occur over some period of time. Thus, to establish a compensable injury by accident, an employee need not prove a single, sudden event accompanied by the immediate onset of pain or other symptoms, but can meet his . . . burden at an expedited hearing by presenting evidence from which the trial court can determine he . . . is likely to prove a compensable set of incidents over an identifiable period of time.

*Id.* at 22. Thus, Mr. Fowler might establish a compensable injury if he presents evidence his conditions arose primarily from exposure to chroming machine exhaust over an identifiable period. Based upon the evidence presented, the Court holds he has not met

---

[5] Mueller moved for a "directed verdict" at the close of Mr. Fowler's proof. The Court considered the motion as one for involuntary dismissal pursuant to Tennessee Rule of Civil Procedure 41.02(2). The Court overruled the motion at that time and took the matter under advisement. The result within this Order renders a determination on the motion unnecessary.

his burden at this Expedited Hearing stage of the proceedings.

Mr. Fowler has produced no medical evidence that his condition is related to an alleged exposure to chroming machine exhaust at Mueller. Such failure is fatal to his claim. The Workers' Compensation Law requires a showing that an injury contributed more than fifty percent in causing the disablement or need for medical treatment, considering all causes. Tenn. Code Ann. § 50-6-102(14)(C) (2015). This showing must be to a reasonable degree of medical certainty, which means, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(13)(D) (2014). Here, Dr. Johnson checked a box on the STD form stating that the conditions at issue did not arise out of the employment. A careful review of Dr. Johnson's records reveals largely illegible, handwritten notes but, from those, the Court can find no mention of any work-relation. This is confirmed by Mr. Fowler's own testimony that Dr. Johnson did not discuss with him the cause of his conditions. Further, Mr. Fowler conceded he has no medical record from any physician that attributes any of his conditions to his alleged work exposures.

In support of his position, Mr. Fowler cites *Reeser v. Yellow Freight Sys., Inc.,* 938 S.W.2d 690, 692 (Tenn. 1997), for the proposition that the "causation requirement is satisfied if the injury has a rational, causal connection to the work" and that "any reasonable doubt in this regard is to be construed in [his] favor." He asserts his case is "not a novel issue," and medical proof that his injury "could be" related to his work at Mueller is sufficient when coupled with his lay testimony from which it may be inferred his work is the cause of his injury. (T.R. 5 at 1.)

In making these arguments, Mr. Fowler relies upon authority inapplicable to injuries occurring on or after July 1, 2014. Namely, this Court is not to construe the law remedially in Mr. Fowler's favor but, rather must construe it fairly and impartially, favoring neither he nor Mueller. Tenn. Code Ann. § 50-6-116 (2015). Further, the applicable causation standard is the arising primarily definition of injury cited above. However, the Court notes that, even under the prior standard, medical proof purportedly linking an injury to the employee's work could "not be speculative or so uncertain regarding the cause of the injury that attributing it to the plaintiff's employment would be an arbitrary determination or a mere possibility." *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987). In this case, Mr. Fowler has yet to produce any medical proof establishing causation.

Given the absence of causation evidence, the Court need not address Mr. Fowler's claims for medical and temporary benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Fowler's claim against Mueller for medical and temporary disability benefits is

5

denied at this time.

2. This matter is set for a Status Hearing on October 19, 2016, at 9:30 a.m. Central Time.

**ENTERED this the 10th day of August, 2016.**

**ENTERED this the 10th day of August, 2016.**

_____
**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Status Hearing:

A Status Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll-free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice

6

of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5.  The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6.  If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. First Report of Work Injury;
2. Wage Statement;
3. Chrome Operator Job Description;
4. Affidavit of Landon Fowler;
5. Affidavit of Billy Bishop;
6. Affidavit of Crystal Buckner;
7. Medical Records of Dr. Samuel Johnson;
8. Statement of Landon Fowler from Human Resources file;
9. "Medical Request Form" for Short Term Disability Application;
10. Statement of Billy Bishop from Human Resources file;
11. "Proof of Loss" for Short Term Disability Application;
12. Summary of Short Term Disability payments and salary of Landon Fowler from December 13, 2015, through February 21, 2016; and
13. "Industrial Hygiene Exposure Assessment Report," dated January 28, 2016.

Technical record:
1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Request for Expedited Hearing with attached affidavit of Mr. Fowler;
4. Employer/Carrier Pre-Expedited Hearing Brief; and
5. Position Statement of Mr. Fowler.[6]

---

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 10th day of August, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| William A. Wooten, Esq. Employee's Counsel | | | X | wawooten@gmail.com |
| Kevin Washburn, Esq. Employer's Counsel | | | X | kwashburn@allensummers.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

9